10 F.3d 598
 Edwin L. BRICKER; Cynthia Bricker, husband and wife,
Plaintiffs-Appellants,
v.
ROCKWELL INTERNATIONAL CORPORATION; Rockwell Hanford
Corporation; Westinghouse Corporation;
Westinghouse Hanford Corporation,
Defendants-Appellees.
 No. 91-36153.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 12, 1993.
Decided Oct. 25, 1993.
 
 Thad Guyer, T.M. Guyer & Friends, P.C., Medford, OR, Michael E. Withey, Schroeter, Goldmark & Bender, Seattle, WA, for plaintiffs-appellants.
 David F. Jurca, Helsell, Mark F. Rising, Fetterman, Martin, Todd & Hokanson, Seattle, WA, for appellee Rockwell Intern. Corp.
 William R. Squires III, Stuart R. Dunwoody, and Bergitta K. Trelstad, Davis Wright Tremaine, Seattle, WA, and Robert A. Dutton, Asst. Gen. Counsel, Westinghouse Hanford Co., Richland, WA, for defendant/appellee Westinghouse Hanford Co.
 Appeal from the United States District Court for the Eastern District of Washington, Alan A. McDonald, District Judge, Presiding.
 Before: CANBY, WIGGINS and T.G. NELSON, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 Edwin and Cynthia Bricker appeal the district court's summary judgment in favor of the defendants in the Brickers' action alleging violations of their federal constitutional rights and various tort claims under Washington state law. We review de novo, Saul v. United States, 928 F.2d 829, 832 (9th Cir.1991), and we affirm.
 
 I. FACTUAL & PROCEDURAL BACKGROUND
 
 2
 In August 1990, Edwin Bricker and his wife Cynthia filed this action against Rockwell Hanford Operations, a division of Rockwell International Corporation ("Rockwell"), Westinghouse Electric Corporation, and Westinghouse Hanford Company ("Westinghouse"). The Brickers' complaint alleged violations of their First, Fourth, and Fifth Amendment rights, and several pendent state law claims. These claims stemmed from Edwin Bricker's employment at the Hanford Nuclear Reservation ("Hanford"), located in Washington State. Hanford is owned by the United States, but is managed by private corporations pursuant to a contract with the Department of Energy ("DOE"). Hanford therefore is known as a government-owned, contractor-operated ("GOCO") nuclear facility. Rockwell operated certain portions of Hanford from July 1977 through June 28, 1987; Westinghouse became the management contractor on June 29, 1987. Bricker was employed at Hanford from July 1977 through August 1979, when he left to attend college. Bricker returned to work at Hanford in February 1983 and remained an employee there until November 1991.
 
 
 3
 The Brickers' complaint alleged that, while Edwin Bricker was employed at Hanford, he became aware of safety, health, and environmental problems at the facility. He voiced his concerns about these matters to his supervisors, officials of Rockwell and Westinghouse, members of Congress, and the news media. The complaint further alleged that, in retaliation for his "whistleblowing" activities, Rockwell and Westinghouse subjected Bricker to various forms of harassment, thereby violating Bricker's federal constitutional rights and committing various state law torts. The Brickers' constitutional claims were predicated on the Supreme Court's decision in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
 
 
 4
 In April 1991, Rockwell and Westinghouse filed a motion to dismiss the Brickers' constitutional claims for failure to state a claim[1] and asserted that there were "special factors" that precluded the judicial creation of a Bivens remedy. The district court granted the defendants' motion and dismissed the Brickers' constitutional claims with prejudice. Because the dismissal of the federal claims eliminated the independent basis for subject matter jurisdiction, the court also dismissed the Brickers' pendent state claims without prejudice. This appeal followed.[2]
 
 II. LEGAL FRAMEWORK
 
 5
 Whether a Bivens remedy can be implied for "whistleblowers" employed at GOCO nuclear facilities is a question of first impression in this circuit. Our analysis of this issue, however, is guided by the Supreme Court's articulation of the factors that courts must consider when determining whether to create a Bivens remedy. In Bivens, the Supreme Court held that the victim of a Fourth Amendment violation committed by federal officers acting under color of their authority could bring an action under federal law for money damages against the officers. 403 U.S. at 389, 91 S.Ct. at 2001. The Bivens Court observed that "[t]he present case involves no special factors counselling hesitation in the absence of affirmative action by Congress." Id. at 396, 91 S.Ct. at 2004-05. The Supreme Court subsequently has allowed "Bivens actions" for money damages against federal officers who violate the due process clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the cruel and unusual punishment clause of the Eighth Amendment, Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). "In each of these cases, as in Bivens itself, the Court found that there were no 'special factors counselling hesitation in the absence of affirmative action by Congress,' no explicit statutory prohibition against the relief sought, and no exclusive statutory alternative remedy." Schweiker v. Chilicky, 487 U.S. 412, 421, 108 S.Ct. 2460, 2467, 101 L.Ed.2d 370 (1988) (citations omitted).
 
 
 6
 More recently, the Court has "responded cautiously to suggestions that Bivens remedies be extended into new contexts." Schweiker, 487 U.S. at 421, 108 S.Ct. at 2467. In Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Court refused to create a Bivens action for enlisted military personnel who alleged that they had been injured by the unconstitutional actions of their superior officers. Similarly, in Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Court unanimously refused to create a Bivens remedy for a federal employee who alleged that his supervisor had improperly disciplined him for exercising his First Amendment rights. In reaching this decision, the Court assumed that a First Amendment violation had occurred and acknowledged that "existing remedies do not provide complete relief for the plaintiff." 462 U.S. at 388, 103 S.Ct. at 2416-17. The Court justified its refusal by explaining that Congress was in a better position to balance the competing policy concerns of "governmental efficiency and the rights of employees." Id. at 389, 103 S.Ct. at 2417.
 
 
 7
 In Schweiker v. Chilicky, the Court refused to create a Bivens remedy for persons who were improperly denied Social Security disability benefits, allegedly as a result of due process violations by the federal officials who administered the program. 487 U.S. at 414, 108 S.Ct. at 2463. The Supreme Court acknowledged that "exactly as in Bush, Congress has failed to provide for 'complete relief': respondents have not been given a remedy in damages for emotional distress or for other hardships suffered because of delays in their receipt of Social Security benefits." Id. at 425, 108 S.Ct. at 2468. Nevertheless, Schweiker explained that:
 
 
 8
 the concept of "special factors counselling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies.
 
 
 9
 Schweiker, 487 U.S. at 423, 108 S.Ct. at 2468; see also Kotarski v. Cooper, 866 F.2d 311, 312 (9th Cir.1989) ("[s]o long as Congress' failure to provide money damages, or other significant relief, has not been inadvertent, courts should defer to its judgment, because 'Congress is the body charged with making the inevitable compromises required in the design of a massive and complex ... program' ") (quoting Schweiker, 487 U.S. at 429, 108 S.Ct. at 2470).
 
 III. DISCUSSION
 A. Congressional Inadvertence
 
 10
 The Brickers first argue that Congress's failure to create "whistleblower" protection for employees at DOE nuclear facilities, was inadvertent and that a remedy for money damages therefore should be judicially created. We disagree.
 
 
 11
 A statutory remedial scheme for workers who expose health and safety violations at nuclear facilities was first enacted in 1978, when Congress added section 210 to the Energy Reorganization Act of 1974. 42 U.S.C. Sec. 5851 (1988). Section 210 prohibits discrimination against "whistleblowers" at commercial nuclear facilities regulated by the Nuclear Regulatory Commission ("NRC"). Id. Among the remedies available to such employees are reinstatement with back pay, compensatory damages, and attorney's and expert witness fees incurred in prosecuting a complaint. 42 U.S.C. Sec. 5851(b)(2)(B). When the alleged harassment of Edwin Bricker occurred, however, section 210 did not provide a remedy for employees of DOE-owned, contractor-operated nuclear facilities, such as Hanford. See Adams v. Dole, 927 F.2d 771, 776-78 (4th Cir.) (section 210's whistleblower protections apply only to employees of licensees of the NRC; section 210 does not apply to employees of contractors operating nuclear facilities owned by the DOE), cert. denied, --- U.S. ----, 112 S.Ct. 122, 116 L.Ed.2d 90 (1991).[3] After examining the legislative history, Adams held that, in passing section 210, Congress "intended to exclude employees of DOE contractors." Id. at 777. Here, the district court agreed with the Fourth Circuit's analysis and ruled that Congress's failure to extend whistleblower protection to employees of DOE contractors was deliberate. Accordingly, the district court found that Congress's decision not to provide the damages remedy sought by the Brickers constituted a "special factor counselling hesitation" within the meaning of Schweiker, 487 U.S. at 423, 108 S.Ct. at 2467-68, and precluded the judicial creation of a Bivens remedy.
 
 
 12
 The Brickers do not dispute that, prior to October 24, 1992, section 210 of the Energy Reorganization Act did not apply to employees at DOE-owned, contractor-operated nuclear facilities. Instead, they contend that the district court incorrectly concluded that Congress deliberately chose not to provide such a remedy. The Brickers argue that, when Congress enacted section 210 in 1978, it focused exclusively on employees at nuclear facilities operated by the NRC and never even considered whether to extend whistleblower protection to employees of DOE contractors. Therefore, they argue that Congress's failure to provide a damages remedy for employees at DOE nuclear facilities was inadvertent and does not preclude a judicially created Bivens remedy.
 
 
 13
 We need not attempt to discern Congress's intent in 1978 when it passed section 210 of the Energy Reorganization Act because we conclude that Congress's subsequent decision regarding remedies for whistleblowers at DOE nuclear facilities undermines the Brickers' argument. Between 1986 and 1991, numerous bills that would have created whistleblower protections for employees of contractors operating nuclear facilities owned by the DOE were introduced in Congress; none was enacted.[4] It is true that we must be reluctant to draw conclusions concerning congressional intent from the mere failure of bills to pass. Cf. Balelo v. Baldrige, 724 F.2d 753, 762-63 (9th Cir.) (where the House of Representatives approved a bill but the Senate failed to act on it, this court observed that "the mere failure of [a] bill to be enacted does not demonstrate congressional disapproval of the ... program"), cert. denied, 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984). Nevertheless, the various attempts at legislation may suggest that Congress's inaction, whatever its reason, was not wholly inadvertent. Moreover, in 1992, Congress enacted amendments to the Energy Reorganization Act of 1974 that provide whistleblower protection for employees at DOE nuclear facilities, including a provision that allows recovery of compensatory damages--precisely the remedy that the Brickers seek in this action. See Energy Policy Act of 1992, Pub.L. No. 102-486, Sec. 2902, 106 Stat. 2776, 3123-25 (1992) (codified at 42 U.S.C.A. Sec. 5851 (West Supp.1993)).
 
 
 14
 Through these amendments, which came too late for the Brickers, Congress has provided an elaborate and comprehensive remedial scheme. Under these statutes, "[a]ny employee who believes that he has been discharged or otherwise discriminated against" because he has engaged in whistleblowing activities has the right to file a complaint with the Secretary of Labor ("the Secretary"). 42 U.S.C.A. Sec. 5851(b)(1) (West Supp.1993). The Secretary must then conduct an investigation of the complaint; if the results of the investigation support the complaint, the Secretary may issue an order granting relief after notice and an opportunity for a public hearing. 42 U.S.C.A. Sec. 5851(b)(2)(A) (West Supp.1993). The relief available includes: reinstatement of the complainant to his or her former position together with compensation (including back pay); compensatory damages; and costs and expenses of bringing the complaint (including attorneys' and expert witness fees). 42 U.S.C.A. Sec. 5851(b)(2)(B) (West 1983). The statute also provides that any person "adversely affected or aggrieved" by the Secretary's order may obtain judicial review of the order. 42 U.S.C.A. Sec. 5851(c) (West 1983). Finally, if a person fails to comply with the Secretary's order, the Secretary may file a civil enforcement action in federal district court. 42 U.S.C. Sec. 5851(d) (West 1983).
 
 
 15
 These amendments, however, provide only prospective relief; they apply to claims filed on or after October 24, 1992, the date of enactment. Pub.L. No. 102-486, Sec. 2902(i), 106 Stat. at 3125. The fact that the amendments were given only prospective effect suggests that Congress did not inadvertently fail to provide relief to persons, such as the Brickers, who filed claims before October 24, 1992. Indeed, it is apparent from the legislative history that Congress decided to provide only prospective relief even though it was aware that harassment of whistleblowers had occurred in the past at DOE nuclear facilities, including Hanford. The House Report states that:
 
 
 16
 [the amendments] broaden[ ] the coverage of existing whistleblower protection provisions to include ... the Department of Energy ("DOE"), a contractor or subcontractor at a Department of Energy nuclear facility, or any other employer engaged in any activity under the Energy Reorganization Act or the Atomic Energy Act of 1954....
 
 
 17
 The ability of nuclear industry employees to come forward to either their employers or to regulators with safety concerns without fear of harassment or retaliation is a key component of our system of assuring adequate protection of public health and safety from the inherent risks of nuclear power. Recent accounts of whistleblower harassment at ... DOE nuclear facilities (e.g. Hanford, Oak Ridge, Rocky Flats) suggest that whistleblower harassment and retaliation remain all too common in parts of the nuclear industry. These reforms are intended to address those remaining pockets of resistance.
 
 
 18
 H.R.Rep. No. 102-474, 102d Cong., 2d Sess., pt. VIII, at 78-79 (1992), reprinted in 1992 U.S.C.C.A.N.1953, 1954, 2296-97 (emphasis added).
 
 
 19
 We cannot create a Bivens remedy if there are "indications that congressional inaction has not been inadvertent." Schweiker, 487 U.S. at 423, 108 S.Ct. at 2468; see also McCarthy v. Madigan, --- U.S. ----, ----, 112 S.Ct. 1081, 1090, 117 L.Ed.2d 291 (1992) (explaining that in applying the "special factors" analysis in Schweiker and Bush, "the Court found the Bivens remedy displaced because Congress had legislated an elaborate and comprehensive remedial scheme") (citations omitted). Because we cannot characterize as inadvertent Congress's decision not to include within its remedial scheme persons who filed claims before October 24, 1992, we are precluded from implying a Bivens remedy for the Brickers' claims. See Schweiker, 487 U.S. at 423, 108 S.Ct. at 2467-68 ("[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies"); Kotarski, 866 F.2d at 312 ("[s]o long as Congress' failure to provide money damages, or other significant relief, has not been inadvertent, courts should defer to its judgment").
 
 
 20
 B. Alternative Remedies Available to the Brickers
 
 
 21
 The Brickers next contend that a Bivens remedy should be judicially created because no comprehensive statutory remedial scheme is available to them; Congress accordingly could not have concluded that it had provided remedies that it considered adequate at that time. In particular, the Bickers assert that the remedies available to Edwin Bricker cannot bar a Bivens action because they are administrative, rather than statutory, remedies. We disagree.
 
 
 22
 The district court described the remedies available to Edwin Bricker as follows. First, the DOE requires that a collective bargaining agreement ("CBA") at a contractor-operated facility should provide "an effective grievance procedure with arbitration as its final step[.]" 48 C.F.R. Sec. 970.2201(b)(5)(ii) (1992). The CBA between Westinghouse and the Hanford Atomic Metal Trades Council contains a grievance procedure and requires that it be used to resolve "claims and disputes on all matters subject to collective bargaining." The CBA also provides for arbitration of any unsettled grievances that involve either the interpretation or application of a provision of the CBA or "[a] disciplinary penalty (including discharge) ... which is alleged to have been imposed without just cause[.]"
 
 
 23
 Second, under 42 U.S.C. Sec. 2201(i)(3) (1988), the DOE is authorized to prescribe regulations and orders "governing the design, location, and operation of facilities ... in order to protect health and to minimize danger to life or property[.]" Pursuant to this statutory grant of authority, DOE issued Order 5438.1A, which establishes occupational health and safety standards for GOCO facilities and prohibits discrimination against an employee who files a complaint or otherwise exercises his or her rights under the order. DOE Order 5438.1A provides a procedure for investigating claims of discrimination and states that "if it is found that such discrimination has occurred, the field organization shall assure that appropriate measures are taken by the contractor, including rehiring or reinstatement of the employee, restoration of lost seniority, and back pay."
 
 
 24
 Third, the National Labor Relations Act declares it an unfair labor practice for an employer to interfere with an employee's right to engage in "concerted activities for ... mutual aid or protection", 29 U.S.C. Sec. 157, and gives the National Labor Relations Board ("NLRB") broad discretion to devise remedies for such unfair labor practices, 29 U.S.C. Secs. 158, 160. See, e.g., Zurn Indus., Inc. v. NLRB, 680 F.2d 683, 694 (9th Cir.1982) (the NLRB "has jurisdiction to investigate unfair labor practices, which include discharges based on protected activity such as voicing safety complaints"), cert. denied, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1366 (1983). The district court concluded that "[although] these remedies, either alone or in combination, do not constitute a comprehensive statutory scheme, they are in fact a remedial mechanism designed to provide relief in circumstances that exist in the instant case[.]"
 
 
 25
 We reject the Brickers' argument that these remedies are inadequate to preclude a Bivens action because they were not Congressionally authorized. First, this argument is inaccurate; the NLRA is a remedy created by Congress. Moreover, Edwin Bricker's remedies under DOE Order 5483.1A were created by the DOE pursuant to 42 U.S.C. Sec. 2201(i)(3), in which Congress directed the DOE to create occupational safety and health regulations for its facilities. Thus, the remedies provided in DOE Order 5483.1A are authorized by Congress, by way of its grant of authority to the DOE. Indeed, this court previously has relied on administratively-created remedies to bar the creation of a Bivens remedy. Berry v. Hollander, 925 F.2d 311, 314-15 (9th Cir.1991) (relying in part on administrative remedies created by the Veterans Administration's Department of Medicine and Surgery to bar Bivens action); accord Heaney v. United States Veterans Admin., 756 F.2d 1215, 1220 (5th Cir.1985) ("[w]here a coordinate branch of the government has provided a government employee with a procedure under which a constitutional claim arising out of the employment relationship is cognizable and some measure of relief may be obtained, a nonstatutory damage action is not available for discharge, demotion, or other adverse personnel actions absent clear evidence of an intent by the coordinate branch not to foreclose the nonstatutory damage remedy"). Finally, courts have held that administratively-created remedies can bar the judicial creation of additional remedies, even in the absence of a comprehensive statutory scheme. See, e.g., Dynes v. Army Air Force Exchange Serv., 720 F.2d 1495, 1498 (11th Cir.1983) (holding that a comprehensive administrative remedial scheme established by Army and Air Force regulations barred creation of a Bivens remedy); Castella v. Long, 701 F.Supp. 578, 584 (N.D.Tex.) (same; rejecting plaintiff's argument that Bivens action was barred "only where the remedial system was Congressionally created"), aff'd mem., 862 F.2d 872 (5th Cir.1988), cert. denied, 493 U.S. 936, 110 S.Ct. 330, 107 L.Ed.2d 319 (1989).
 
 
 26
 The Brickers rely heavily on the Eighth Circuit's decision in Krueger v. Lyng, 927 F.2d 1050 (8th Cir.1991), for the proposition that administratively created remedies cannot preclude a Bivens remedy. In Krueger, the Eighth Circuit held that an employee of a county office of the Agricultural Stabilization and Conservation Service ("ASCS"), a division of the United States Department of Agriculture, could maintain a Bivens action against various federal officials who allegedly had fired him in retaliation for whistleblowing activities. Id. at 1051-52, 1057. Krueger, however, is distinguishable from this case for three reasons. First, as the Eighth Circuit explained:
 
 
 27
 [t]he statute creating the ASCS does not direct the Secretary of Agriculture to create a specific administrative scheme for overseeing the ASCS programs. Instead, the statute calls for the election of local county committees, and requires the Secretary to "make such regulations as are necessary relating to the selection and exercise of the functions of the respective committees, and to the administration, through such committees, of such programs."
 
 
 28
 927 F.2d at 1055 (quoting 16 U.S.C. Sec. 590h(b)). Here, in contrast, the enabling statute pursuant to which the DOE promulgated Order 5483.1A specifically authorizes the DOE to create occupational health and safety regulations for its facilities. See 42 U.S.C. Sec. 2201(i). The specificity of this statutory provision distinguishes this case from Krueger.
 
 
 29
 Second, the only remedy made available to Krueger under the Secretary of Agriculture's regulations was "appealing to the supervisor of those who fired him." Krueger, 927 F.2d at 1056. Here, in contrast, the remedies available to Bricker include a grievance procedure with arbitration as its final step, and the opportunity to file a formal complaint with the DOE, which it must investigate. Indeed, when Bricker filed his complaint pursuant to DOE Order 5483.1A, the DOE requested that a Department of Labor investigator examine the complaint. The investigator conducted an investigation and issued a report analyzing Bricker's claims. The DOE's final decision adopted the report's recommendations and granted monetary and other relief to Bricker.
 
 
 30
 Third, the Eighth Circuit found that Congress's failure to provide additional remedies for ASCS employees was inadvertent. Krueger, 927 F.2d at 1057 (it "seems plain to us that Congress never has given a moment's thought to the question of what sort of remedies should be available to ASCS county office employees like Krueger"). Here, as we already have explained, Congress did not inadvertently fail to provide additional statutory remedies for whistleblowers at DOE nuclear facilities prior to 1992. Accordingly, we conclude that the remedies available to Edwin Bricker are sufficient to bar the judicial creation of a Bivens remedy. Cf. Schweiker, 487 U.S. at 421-22, 108 S.Ct. at 2466-67 ("[t]he absence of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation").
 
 C. Nondelegation Doctrine
 
 31
 The Brickers' final argument is that, if the remedies available to Edwin Bricker are held to preclude a Bivens remedy, Congress has violated the nondelegation doctrine of Article 1, Sec. 1 of the Constitution by granting the executive branch (the DOE) jurisdiction over their constitutional claims. To support their argument, the Brickers rely primarily on dicta in Krueger. See Krueger, 927 F.2d at 1055 (suggesting but not ruling that "to allow an administratively-created scheme to foreclose a Bivens action, without some real indication that Congress intended the administratively-created scheme to have that result, would require us to hold that the legislative power to foreclose a Bivens action has been delegated--a delegation almost certainly in violation of the separation of powers doctrine."). We reject this argument because we find that 42 U.S.C. Sec. 2201(i)(3), which grants DOE authority to create occupational safety and health regulations for its nuclear facilities, provides sufficiently specific standards to pass constitutional muster. See Mistretta v. United States, 488 U.S. 361, 372-73, 109 S.Ct. 647, 654-55, 102 L.Ed.2d 714 (1989) (Congressional delegation is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority") (quotation omitted); Wileman Bros. & Elliott, Inc. v. Giannini, 909 F.2d 332, 337 n. 9 (9th Cir.1990) ("[w]ith respect to federal agencies, only very broad, literally standardless grants of legislative power will offend the Constitution").
 
 
 32
 Accordingly, we affirm the district court's judgment.
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 The district court treated the motion to dismiss as one for summary judgment as provided in Fed.R.Civ.Proc. 12(b)
 
 
 [2]
 In its order granting summary judgment, the district court noted that "[t]he record as it currently stands is insufficient for any determination as to whether defendants are 'federal actors' against whom liability can be imposed under Bivens. Nor, for the purposes of defendants [sic] motion to dismiss constitutional claims, shall the court assume that the defendants are federal actors." Of course, a determination that Rockwell and Westinghouse were not federal officers acting under color of their federal authority would be an independent bar to the maintenance of a Bivens action against them. See Bivens, 403 U.S. at 389, 91 S.Ct. at 2001 (creating cause of action against federal agent acting under color of his authority). Nevertheless, despite the absence of a finding on this issue, we conclude that the district court had jurisdiction because the Brickers' complaint contains a nonfrivolous allegation that the defendants are federal actors. See Keniston v. Roberts, 717 F.2d 1295, 1298 (9th Cir.1983) (federal jurisdiction is established if the complaint claims a right to recover under federal law and the claim is not " 'wholly insubstantial and frivolous' ") (citing Jackson Transit Auth. v. Local Div. 1285, 457 U.S. 15, 21 n. 6, 102 S.Ct. 2202, 2206 n. 6, 72 L.Ed.2d 639 (1982)) (additional citations omitted)
 
 
 [3]
 Effective October 24, 1992, Congress amended 42 U.S.C. Sec. 5851 to provide whistleblower protection for employees of DOE contractors. See Energy Policy Act of 1992, Pub.L. No. 102-486, Sec. 2902(a), 106 Stat. 2776, 3123 (1992). These amendments, however, apply only to claims filed on or after October 24, 1992. Pub.L. No. 102-486, Sec. 2902(i), 106 Stat. at 3125
 
 
 [4]
 See S. 1622, 102d Cong., 1st Sess. (1991); H.R. 3160, 102d Cong., 1st Sess. (1991); S. 436, 101st Cong., 1st Sess. (1989); H.R. 3368, 101st Cong., 1st Sess. (1989); S. 1958, 101st Cong., 1st Sess. (1989); H.R. 3521, 101st Cong., 1st Sess. (1989); H.R. 3255, 101st Cong., 1st Sess. (1989); H.R. 1861, 101st Cong., 1st Sess. (1989); S. 2758, 100th Cong., 2d Sess. (1988); S. 2095, 100th Cong., 2d Sess. (1988); H.R. 4071, 100th Cong., 2d Sess. (1988); H.R. 1716, 100th Cong., 1st Sess. (1988); H.R. 5659, 99th Cong., 2d Sess. (1986)