SILBERMAN, Senior Circuit Judge,
concurring in part and dissenting in part:
I agree with my colleagues that it was arbitrary and capricious for OFAC to impose liability on Epsilon Electronics for the five shipments that were sent in 2012. Maj. Op. at 925-26, 927. But I would go further in ordering a remand. OFAC has exacted a penalty based on a confusing, indeed mystifying, decision.
We are reviewing an informal adjudication of OFAC (referred to as a penalty notice) that imposed a large fine on appellant. OFAC sent appellant a pre-penalty notice—in the nature of a complaint—alleging that appellant violated a regulation restricting trade with Iran.[1] The complaint asserted that appellant had sent car audio and video equipment to a company, Asra, in Dubai, which exported “most, if not all, of its products to Iran. [Therefore] Epsilon knew or had reason to know that such goods were intended specifically for supply, transhipment, or reexportation, directly or indirectly, to Iran.”
Accordingly, the complaint suggested that only appellant’s intent was relevant to its liability, whether or not the goods ever actually arrived in Iran. But appellant, apparently reading the regulation as did most exporters according to amicus, assumed there was no violation unless there was evidence that the goods arrived in Iran. Appellant pointed out in a response to the pre-penalty notice that there was no evidence that any of the audio and video equipment actually arrived in Iran.
So the proper interpretation of the regulation was put squarely in issue before OFAC.
To review, the regulation states:
§ 560.204 Prohibited exportation, reex-portation, sale, or supply of goods, technology, or services to Iran.
Except as otherwise authorized pursuant to this part, and notwithstanding any contract entered into or any license or permit granted prior to May 7, 1995, the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited, including the exportation, reexportation, sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that:
(a) Such goods, technology, or services are intended specifically for supply, transshipment, or reexportation, directly or indirectly, to Iran or the Government of Iran; or
[[Image here]]
31 C.F.R. § 560.204 (emphasis added).
The government’s brief relies on the including clause as establishing the basis *933 for the violation. Appellant responded that the including clause should not be read as providing a separate grounds for violation; it is only an illustration of the broader ban which still requires a showing that the goods arrived in Iran.
Paradoxically, the majority does not rely primarily on the including clause. Actually, its discussion of the clause at page 923 appears to be exactly opposite to the government’s, which, I suppose, makes obvious that the including clause is ambiguous as to whether it sets forth a separate ground for violation. In any event, including clauses are notoriously ambiguous. See, e.g., American Surety Co. of N.Y. v. Marotta, 287 U.S. 513, 517, 53 S.Ct. 260, 77 L.Ed. 466 (1933); Ohio v. EPA, 997 F.2d 1520, 1543 (D.C. Cir. 1993); Adams v. Dole, 927 F.2d 771, 775 (4th Cir. 1991). That courts may have settled on a default rule as a means of resolving that ambiguity when required to do so themselves is irrelevant.
Instead the majority assumes, along with appellant, that the key phrase is “export ... to Iran” (it carries over to the including clause). Does that phrase mean the goods just have to be sent by the first sender towards Iran or must there be a showing that the goods arrived in Iran? Unfortunately OFAC’s decision never discusses the proper interpretation of the regulation; it conducts no textual exegesis. (Even the government’s brief does not make a specific textual argument except to assert that the words after “including” create an additional overriding prohibition— implying, contrary to the majority’s view, ironically, that without the including clause, the words “to Iran” would not be adequate to make out the government’s case.)
Moreover—and here is the core of the reason I think we must remand—in response to appellant’s defense that there is no evidence the goods arrived in Iran, OFAC’s decision is quite confusing. It stated “multiple facts tend to show that the goods exported to Asra were sent to Iran.” (emphasis added). In other words, the agency fudged the answer to the crucial question.
It appears that the agency’s draftsman, aware of the ambiguity in the regulation, was straddling the issue of whether or not the agency had to prove that the goods arrived in Iran. (It reminds me of the famous Yogi Berraism, “if you come to a fork in the road, take it.”) That approach simply is not consistent with the obligation under the APA to engage in reasoned decision-making. See generally Allentown Mack Sales & Service, Inc. v. NLRB, 522 U.S. 359, 374-75, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998).
The majority ignores this ambiguous language in the agency’s decision; it focuses on the complaint and the complaint’s implicit interpretation of the regulation. But even were we to assume the complaint’s allegations were crystal clear, that is quite irrelevant as to the clarity of the agency’s decision. After all, we review final agency actions, not preliminary complaints. I would have thought that was black letter administrative law.
Perhaps recognizing the agency’s failure to explicitly interpret the regulation as applied to this case, the government seeks deference to the interpretation it advances in litigation, which I’ve pointed out is rather skimpy. The majority decides, however, that deference is not necessary and spends pages and pages setting forth its “reading” of the phrase “to Iran,” leading to its conclusion the agency’s decision can be upheld.
I hardly know where to start. First, the majority never denies that the regulation is ambiguous—still less the adjudication— it simply sets forth its interpretation of the regulation which favors the government’s *934 decision. But the problem with the majority treating deference as irrelevant is it improperly appears to freeze the agency’s interpretation of an ambiguous regulation. Cf. Perez v. Mortgage Bankers Ass’n, — U.S.-, 135 S.Ct. 1199, 191 L.Ed.2d 186 (2015). Even if one were to agree with the majority that its interpretation of the regulation were the better one, I have little doubt that another OFAC leadership could interpret the language differently. Suppose, for instance, an exporter in Omaha sent goods to Iran to be consolidated with a brother-in-law’s shipment in Chicago. The brother-in-law, blessed with legal advice, determined not to send the goods. Would the Omaha shipper be in violation of the regulation? According to the majority, yes, but I certainly could imagine OFAC reasonably coming to another answer.
Second, the majority’s lengthy interpretation of the regulation totally ignores another fundamental principle of administrative law going back to Chenery I. 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). It is not up to a reviewing court to offer explanations for an agency decision not articulated by the agency. If one accepts—and I don’t know how it can be denied—that the agency’s decision is ambiguous as to whether actual evidence exists of appellant’s goods arriving in Iran and whether such evidence is necessary, it is hardly open to a reviewing court to “clarify” the agency’s decision. The majority asserts it can see the “path” the agency traveled, drawing, in part on the complaint and on government’s brief, but that just ignores the confusion in the adjudication which, of course, is the final agency action we are reviewing. We know what the agency’s preliminary interpretation of the regulation was, but, after it was contested, we don’t know the agency’s interpretation in its final decision.
Finally, perhaps the strangest objections the majority raises to a remand to clarify the adjudication’s ambiguity are: (1) that appellant was not prejudiced because whether or not the adjudication was ambiguous, the complaint was not; and (2) in any event, appellant never argued that it was separately harmed by the ambiguity in the adjudication. Maj. Op. at 924-25. The first point assumes that the complaint is somehow transformed into final agency action. It is so contrary to administrative law—indeed all law—I hardly know what to say. The second point is equally bizarre. Of course, appellant wouldn’t “specifically” argue that the agency’s ambiguity required a remand. It wanted a decision holding the agency adjudication was inconsistent with the regulation. A remand is what a court does when it is not sure how the agency read the regulation and applied it to the facts. No case of ours ever held that a party challenging an agency’s interpretation of a regulation or a statute has to specifically ask for a remand if we conclude the agency’s decision is ambiguous.[2]

. OFAC’s regulations describe a pre-penalty notice as containing allegations. 31 C.F.R. § 560.703(b).

. I would have been inclined to reject liability entirely rather than remand had appellant made the argument that imposing a penalty pursuant to an ambiguous regulation is inappropriate if you interpret it for the first time in a penalty proceeding. See Gates & Fox Co., Inc. v. Occupational Safety and Health Review Comm’n, 790 F.2d 154, 156 (D.C. Cir. 1986). But as the government pointed out at oral argument, appellant did not take that position.