## AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Plaintiff–Appellee,

v.

## COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Defendant–Appellant.

No. 91–4088.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 8, 1992.

Decided and Filed Feb. 18, 1993.

court is forbidden by the anti-injunction provision of the Norris–LaGuardia Act, 29 U.S.C. § 104, which provides in part that:

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute ... from ... [g]iving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence....

The Supreme Court has recognized an exception to this statute in situations where the labor dispute is subject to "a mandatory grievance adjustment or arbitration procedure." *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 253, 90 S.Ct. 1583, 1593, 26 L.Ed.2d 199 (1970). The question before this court is whether the *Boys Markets* exception covers only binding arbitration agreements in which the dispute is submitted to a neutral third party, or whether it also includes nonbinding grievance procedures requiring only negotiations between the parties. We conclude that the exception covers only binding arbitration, not the type of nonbinding grievance procedure before us in this case. Accordingly we remand the case to the district court with instructions to vacate its preliminary injunction.

I.

Bradd N. Siegel (argued and briefed), Porter, Wright, Morris & Arthur, Columbus, OH, for plaintiff-appellee.

Stewart R. Jaffy, Warren J. Smith, Stewart, Jaffy & Associates, Columbus, OH, James B. Coppess (argued and briefed), Washington, DC, for defendant-appellant.

Before: MERRITT, Chief Judge, and BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges.

MERRITT, Chief Judge.

The question before us is whether the preliminary injunction issued by the district

This case arises out of a labor dispute between the Communications Workers of America and the American Telephone and Telegraph Company. In July of 1991, Radio Shack contracted with AT & T to have AT & T move some telecommunication lines at a Radio Shack regional distribution center. AT & T subcontracted the work out to Signal Communications, Inc. The Union complained that under the parties' "Operations" collective bargaining agreement, the Radio Shack work was reserved for AT & T employees. AT & T disagreed.

Under the bargaining agreement, subcontracting disputes are subject to the

agreement's nonbinding grievance procedures, but are not subject to arbitration. Pursuant to the agreement, the Union filed a grievance with AT & T which has not been resolved. The Union offered to submit the dispute to arbitration, but AT & T has refused, as is its right under the agreement.

The Union also undertook other activities in response to AT & T's actions. It organized handbilling and "informational picketing" at various locations including: the Radio Shack regional distribution center where the dispute arose; the corporate headquarters of Tandy Corporation, Radio Shack's parent company; two Radio Shack retail outlets; and facilities of AT & T customer General Dynamics in San Diego and Houston.[1] The Union also put pressure on AT & T through Rush Package Delivery, Inc., a company used by AT & T for package delivery. A Union representative informed Rush Delivery's Director of Human Resources that if Rush Delivery continued to make deliveries for AT & T, the Union would attempt to organize Rush Delivery's Columbus office.

AT & T contends that these Union activities were in violation of the collective bargaining agreement. The section of the agreement addressing contracting out of work states that disputes are subject to the grievance procedures, but not the arbitration provisions. The agreement also provides that "the grievance procedures ... provide the mutually agreed upon and exclusive forums for resolution and settlement of employee disputes during the term of this Agreement." More specifically, the agreement states that "[n]either the Company, nor the Union, its locals or representatives will attempt by means other than the grievance, arbitration, and/or mediation procedures to bring about the resolution of any issue which is properly a subject for disposition through such procedures." AT & T asserts that the protest activities undertaken by the Union were attempts to influence the resolution of the subcontracting dispute by means other than the grievance procedure.

The grievance procedure mandates a series of meetings between Union representatives and AT & T representatives, with the goal of reaching a voluntary resolution of the dispute. The first step of the procedure is a meeting between a Local Union representative and the first or second level supervisor of the aggrieved employee. If no agreement is reached, the second step is a meeting between an officer of the Local Union and a third level supervisor. The final step is a meeting between the Union's Vice President and AT & T's Director of Labor Relations, or their designated representatives. These meetings are subject to time limits which cannot be changed without the consent of both parties.

AT & T filed suit in the Federal District Court for the Southern District of Ohio, seeking a temporary restraining order and a preliminary injunction preventing the Union from continuing its protest activities. The court granted a temporary restraining order, followed by a preliminary injunction, finding that the Union had violated the collective bargaining agreement. The Union was enjoined from attempting to resolve the subcontracting dispute by any means other than those provided for in the bargaining agreement, including picketing and handbilling at the premises of any AT & T customer, until the grievance procedure has been exhausted. The Union appeals the district court's order.

## II.

The *Boys Markets* exception to the Norris–LaGuardia Act allows a court to enjoin activities undertaken in violation of an arbitration agreement. *Boys Markets*, 398 U.S. at 254, 90 S.Ct. at 1594. The district court held that the exception also

---

1. On the same day that AT & T filed this action, the National Labor Relations Board filed a petition for an injunction against the Union's picketing at Radio Shack facilities. This petition alleged that the picketing violated the secondary boycotts prohibition of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(ii)(B). The petition did not challenge the propriety of the Union's handbilling. The Union agreed to stop picketing Radio Shack, and the Board withdrew its petition.

applies to grievance procedures involving only negotiations, relying in part upon the specific language in *Boys Markets*. The district court pointed to the Supreme Court's statement that "[w]e deal only with the situation in which a collective-bargaining contract contains a *mandatory grievance adjustment* or arbitration procedure." *Boys Markets*, 398 U.S. at 253, 90 S.Ct. at 1594 (emphasis added). In order to give some meaning to the term "grievance adjustment," the district court interpreted the exception as applicable to grievance procedures like those in the parties' bargaining agreement.

■ The district court's broad interpretation of the *Boys Markets* exception is not justified by the Supreme Court's single use of the phrase "mandatory grievance adjustment." The Court repeatedly makes clear that it is addressing the scope of the Norris–LaGuardia Act in the "arbitration context." *Id.* at 246, 253, 90 S.Ct. at 1590, 1594. Because *Boys Markets* involved a dispute subject to an arbitration agreement, any suggestion that grievance procedures short of arbitration are also within the exception would be dicta, and beyond the intended scope of the "narrow" opinion. Further, it is not clear that the phrase "mandatory grievance adjustment" refers to the kind of grievance procedures agreed to by AT & T and the Union. The negotiations are "mandatory," but resolution of the dispute is not because it must be the result of voluntary agreement.

■ *Boys Markets* sets out certain principles to guide district courts in determining whether to grant an injunction under the exception created. Under these principles, a court must determine whether the dispute is "over a grievance which both parties are contractually bound to arbitrate;" the court must then order the employer "to arbitrate, as a condition of his obtaining an injunction." *Id.* at 254, 90 S.Ct. at 1594 (quoting *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 228, 82 S.Ct. 1328, 1346, 8 L.Ed.2d 440 (1962) (Brennan, J., dissenting)). Because the dispute between AT & T and the Union is not one that both parties are contractually bound to

arbitrate, the injunction cannot be upheld unless we interpret the term "arbitrate" to include structured negotiations between the parties. There is no justification for doing so.

The policy behind the *Boys Markets* exception requires that the exception only apply when the dispute is subject to arbitration before an impartial third party. The Court states that "the central purpose of the Norris–LaGuardia Act [is] to foster the growth and viability of labor organizations," and that this goal is not hindered by an exception that "merely enforces the obligation that the union freely undertook under a specifically enforceable agreement to submit disputes to arbitration." *Id.* 398 U.S. at 252–53, 90 S.Ct. at 1593. In a footnote explaining this statement, the Court cites with approval the American Bar Association *Sinclair* Report, which argues that "where the underlying dispute is arbitrable, the union is not deprived of any practicable means of pressing its claim but is only required to submit the dispute to the *impartial tribunal that it has agreed to establish for this purpose.*" *Id.* at 253 n. 22, 90 S.Ct. at 1594 n. 22 (quoting Report of Special *Atkinson–Sinclair* Committee, A.B.A. Labor Relations Law Section—Proceedings 242 (1963)) (emphasis added). The district court's order requiring the Union to exhaust its remedies under the grievance procedures before resorting to self-help does not further the purposes of the Norris–LaGuardia Act because the nonbinding grievance procedures allow a party the discretion to turn the negotiations into a meaningless exercise by refusing to reach an agreement. *Cf. UAW v. Dana Corp.*, 679 F.2d 634, 642–43 (6th Cir.1982) (upholding injunction as necessary to enforce arbitration where employer's actions threaten to make a "hollow formality" of the arbitral process).

AT & T argues that because the grievance procedures are subject to strict time limits, the company has no incentive to sabotage the procedures by negotiating in bad faith. The prospect of Union self-help following unsuccessful negotiations provides an incentive for the company to re-

solve disputes by voluntary agreement. We are not convinced, however, that this incentive is sufficiently strong to warrant expanding the *Boys Markets* exception beyond its traditional limits. The danger that AT & T could use the grievance process to delay meaningful union action justifies adherence to the broad language of the Norris–LaGuardia Act. The Act is meant to prevent deprivation of "practicable means of [the union] pressing its claim," *Boys Markets*, 398 U.S. at 253 n. 22, 90 S.Ct. at 1594 n. 22 (quoting the A.B.A. *Sinclair* Report 242), whether such deprivation is permanent or temporary. *See* Norris–LaGuardia Act, 29 U.S.C. § 104 (prohibiting both temporary and permanent injunctions).

In *Teamsters v. Yellow Transit Freight Lines*, 370 U.S. 711, 82 S.Ct. 1293, 8 L.Ed.2d 792 (1962), the Supreme Court held that a no-strike injunction had been issued in violation of the Norris–LaGuardia Act. The strike was over a labor dispute subject to grievance procedures similar to those in the collective bargaining agreement at issue here:

> The grievance machinery emphasizes voluntary settlements through negotiations between employer and union representatives. Settlement is first to be attempted between the employer and the local union involved and, failing adjustment, negotiated settlement is to be attempted by a joint state committee consisting of equal numbers of employer and union representatives.... If a joint state committee fails to settle a dispute, a negotiated settlement is then to be attempted by a joint area committee.... This is the last stage unless there is agreement at that point to submit unsettled disputes to arbitration. Obviously, either employer or union representatives are free to prevent arbitration.

*Id.* at 712 n. *, 82 S.Ct. at 1294 n. * (Brennan, J., concurring).

The *Yellow Transit* majority based its decision upon *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), which rejected what later became the *Boys Markets* exception.

For the majority, then, it did not matter whether the bargaining agreement called for structured negotiations or arbitration—neither was sufficient to justify an exception to the Norris–LaGuardia Act. Justice Brennan wrote a concurring opinion explaining the decision in terms more consistent with *Boys Markets*. *Yellow Transit*, 370 U.S. at 711–12, 82 S.Ct. at 1293–94 (Brennan, J., concurring). Justice Brennan had dissented in *Sinclair*, arguing that the Norris–LaGuardia Act should not apply where the labor dispute is subject to an arbitration agreement. *Sinclair*, 370 U.S. at 215, 82 S.Ct. at 1339 (Brennan, J., dissenting). This view eventually prevailed in *Boys Markets*, which specifically adopted the reasoning of the *Sinclair* dissent. *Boys Markets*, 398 U.S. at 249–50, 90 S.Ct. at 1591–92. Justice Brennan, joined by the other two *Sinclair* dissenters, also based his *Yellow Transit* concurrence upon the *Sinclair* dissent. The *Yellow Transit* concurrence states simply, "[s]ince it is clear that the collective bargaining agreement involved in this case does not bind either party to arbitrate any dispute, I agree that no injunction should be granted." *Yellow Transit*, 370 U.S. at 711–12, 82 S.Ct. at 1293–94 (citing *Sinclair*, 370 U.S. at 215, 82 S.Ct. at 1339 (Brennan, J., dissenting)) (footnote omitted).

Although Justice Brennan's concurrence in *Yellow Transit* is not binding precedent, under the circumstances it is very persuasive. *See Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 415 n. 4, 96 S.Ct. 3141, 3151 n. 4, 49 L.Ed.2d 1022 (1976) (Stevens, J., dissenting) (citing the *Yellow Transit* concurrence as authority for the proposition that "it does not follow from the availability of an injunction when the agreement contains a mandatory arbitration clause that one may issue when it does not"). If the grievance procedures at issue in *Yellow Transit* were not sufficiently similar to arbitration to justify an exception to the Norris–LaGuardia Act, neither are the grievance procedures at issue here.

■ At oral argument, AT & T asserted that the district court's injunction should be upheld under a line of cases allowing

injunctions to enforce the provisions of the Railway Labor Act. The Railway Labor Act subjects "major" labor disputes to structured negotiations and government mediation, but does not require arbitration. *Brotherhood of Ry. Carmen v. Norfolk and W. Ry.*, 745 F.2d 370, 374–75 (6th Cir.1984). The Supreme Court has sought to accommodate the conflicting policies of the Norris–LaGuardia Act and the Railway Labor Act by holding that a no-strike injunction may issue only when it is the "only practical, effective" means of enforcing the Railway Labor Act. *Chicago & N.W. Ry. v. United Transp. Union*, 402 U.S. 570, 583, 91 S.Ct. 1731, 1738, 29 L.Ed.2d 187 (1971). In *Boys Markets*, the Supreme Court faced a similar problem: "the Norris–LaGuardia Act must be accommodated to the subsequently enacted provisions of § 301(a) of the Labor Management Relations Act and the purposes of arbitration." *Boys Markets*, 398 U.S. at 250, 90 S.Ct. at 1592. Although the Court looked to previous attempts to reconcile the Norris–LaGuardia Act and the Railway Labor Act for guidance, *id.* at 251–52, 90 S.Ct. at 1592–93, it ultimately reached a different accommodation. Under *Boys Markets*, an injunction may not issue merely because it is the only practical means of enforcing a collective bargaining agreement—an injunction is proper only to enforce an agreement to submit labor disputes to binding arbitration.

The parties' bargaining agreement does not require submission of subcontracting disputes to binding arbitration. It is not, therefore, within the *Boys Markets* exception to the Norris–Laguardia Act. We need not decide whether the Union's protest activities otherwise violate the agreement.

For the forgoing reasons we REMAND the case to the district court with instructions to VACATE its preliminary injunction.