1997 ME 18

**STATE OF THE ARTS, INC.**

v.

**CONGRESS PROPERTY MANAGEMENT CORP.**

Supreme Judicial Court of Maine.

Argued Jan. 7, 1997.

Decided Jan. 29, 1997.

---

Christopher C. Taintor (orally), Peter J. DeTroy, Norman, Hanson & DeTroy, Portland, for plaintiff.

Timothy S. Keiter (orally), Erika L. Kennedy, Portland, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1]   State of the Arts, Inc., appeals from the judgment of the Superior Court (Cumberland County, *Fritzsche, J.*) denying its request for an order compelling arbitration with Congress Property Management Corporation ("Congress Property"), the owner of the State Theater in Portland.  On appeal, State of the Arts contends that the Superior Court erred in concluding that the dispute resolution provision of its lease agreement with Congress Property did not make arbitration proceedings mandatory if one party requested them.  We disagree and affirm the judgment.

## Background

[¶ 2]   In July of 1996, State of the Arts became the sublessee of a lease originally entered into by Congress Property and Perfect Pitch, Inc., for the State Theater, located on Congress Street in Portland.  Since September 1, 1996, State of the Arts has not paid rent to Congress Property because of a dispute over which party is responsible for repairs to the theater.  The parties began negotiations soon after the dispute arose, and agreed on mediation.  When State of the Arts later requested that Congress Property submit to binding arbitration, Congress Property refused.[1]  On September 27, 1996, State of the Arts sought an order from the Superior Court compelling arbitration of the parties' dispute.  The court denied the request.  The issue before us is whether the dispute resolution provision of the lease makes arbitration mandatory if one party requests it.[2]

## Discussion

[¶ 3]   The dispute resolution clause is written in the disjunctive: the parties "shall negotiate in good faith, engage in mediation in good faith or submit to binding arbitration. . . ."  This plain language requires the parties to attempt either negotiation, mediation by a neutral qualified party according to the rules of the American Arbitration Association to resolve such dispute.  In any dispute regarding the terms of this lease or the enforcement thereof, reasonable costs of enforcement (including attorneys fees) shall be paid to the prevailing party.

1.  Article 32 of the lease agreement provides:

> *Dispute Resolution.* Landlord and Tenant agree that, in the event of a dispute over any term of this lease, including any term wherein reasonableness of consent or approval of a party shall be required, and excepting (i) any action to enforce in a court of appropriate jurisdiction the binding determination of such an arbitrator against either party, or (ii) any action by Landlord for possession of the demised premises pursuant to Maine law then in effect based upon a terminable default, which default Tenant does not dispute, the parties shall negotiate in good faith, engage in mediation in good faith or submit to binding arbitra-

2.  Congress Property raises several arguments concerning the underlying dispute between the parties, in the absence of a factual record supporting its arguments.  We could not consider those arguments on the basis of this record. More importantly, we resolve the issue before us on the basis of the language in the lease.

tion, or arbitration. Although State of the Arts asks us to envision a situation in which the parties cannot agree on one of the specified forms of dispute resolution, and argues from this stalemate scenario that only the ability to compel arbitration gives meaning to the dispute resolution clause, State of the Arts overlooks the fact that the clause is not meaningless if it is simply read as its plain language dictates. The parties agree to pursue alternative dispute resolution in the event of a dispute. Three procedures are presented as possibilities. None of the possibilities, however, is mandatory. In this case the clause served its purpose by promoting an attempt at a resolution of the dispute without resort to litigation. The clause does not become meaningless because this effort may have failed, or because the clause may not adequately address every conceivable scenario.

[¶ 4] State of the Arts cites our holding in *Orthopedic Physical Therapy v. Sports Therapy Centers, Ltd.,* 621 A.2d 402 (Me. 1993), in support of its interpretation of the dispute resolution clause. There we recognized "the policy in Maine ... favoring arbitration" and held that the contract's arbitration provision providing that a dispute "may be settled by arbitration" was a mandatory arbitration clause.[3] *Id.* at 403. We reasoned that since the parties could always seek arbitration if they so chose, the clause would be meaningless unless it was read as requiring arbitration if one party requested it. *Id.* Here, as noted, the alternative dispute resolution clause is not meaningless without mandatory arbitration. The parties decided to phrase Article 32 in the disjunctive, making plain their intent to offer three alternative dispute resolution options in the event of a dispute. The parties "cannot be compelled to submit their controversy to arbitration unless they have manifested in writing a contractual intent to be bound to do so." *Nisbet v. Faunce,* 432 A.2d 779, 782 (Me. 1981). The parties have not done so here.

---

3. The Clause in *Orthopedic Physical Therapy* read as follows:
    ARBITRATION: Any and all disputes arising out of, under, in connection with, or in relation to this Agreement may be settled by arbitration in the Commonwealth of Virginia before the

The entry is:

Judgment affirmed.

American Arbitration Association in accordance with its rules then obtaining, and judgment upon the [award] rendered may be entered in any court having jurisdiction thereof. 621 A.2d at 403.