# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

BANKERS INSURANCE COMPANY,
       *Defendant-Appellant.*

No. 00-1342

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
J. Frederick Motz, Chief District Judge.
(CA-99-3538-JFM)

Argued: November 2, 2000

Decided: March 27, 2001

Before WIDENER and KING, Circuit Judges, and
Margaret B. SEYMOUR, United States District Judge
for the District of South Carolina, sitting by designation.

---

Reversed and remanded by published opinion. Judge King wrote the
opinion, in which Judge Widener joined. Judge Seymour wrote an
opinion concurring in part and dissenting in part.

---

## COUNSEL

**ARGUED:** Barry Steven Simon, WILLIAMS & CONNOLLY,
L.L.P., Washington, D.C., for Appellant. S. Hollis Fleischer, Assis-
tant United States Attorney, Baltimore, Maryland, for Appellee. **ON
BRIEF:** William R. Murray, Jr., Eric R. Delinsky, WILLIAMS &

CONNOLLY, L.L.P., Washington, D.C., for Appellant. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

**OPINION**

KING, Circuit Judge:

This appeal arises from a civil suit initiated by the Government in November 1999 in the District of Maryland, on behalf of the Federal Emergency Management Agency ("FEMA"), against Bankers Insurance Company. In its Complaint, the Government asserts three common law theories of recovery, plus a separate statutory claim under the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"). Bankers sought to stay the litigation proceedings pending arbitration, but the district court denied its stay request. Bankers has appealed the district court's ruling pursuant to 9 U.S.C. § 16(a)(1)(A) (authorizing interlocutory appeals to review denials of motions to stay proceedings pending arbitration). For the reasons explained below, we reverse and remand.

I.

A.

Bankers is a private insurance company that sells and administers flood insurance policies through the National Flood Insurance Program ("NFIP").[1] In 1983, the Federal Insurance Administration ("FIA"), which is charged by FEMA with administration of the NFIP, *see* 44 C.F.R. § 2.31 (1999), established the Write-Your-Own ("WYO") program, under which commercial insurance companies sell and administer flood insurance policies to the public. *See* 44 C.F.R. § 62.23 (1999). Bankers has been a participant (an "insurer" and a "WYO Company") in the WYO program since its inception, when Bankers entered into a Financial Assistance/Subsidy Arrangement ("Arrangement") with FEMA and the FIA. According to the

---

[1]The NFIP was established by Congress in the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129 ("NFIA").

Complaint, Bankers and the Government renewed the Arrangement annually from 1984 until 1997. The Arrangement, which tracks a form agreement promulgated and mandated by FEMA in the Code of Federal Regulations, governs the terms and conditions of all WYO program insurers in their sale and administration of federal flood insurance. *See* 44 C.F.R. § 62 app. A. Of significance to this appeal, both the Arrangement and the C.F.R. form agreement contain the following arbitration provision:

> Article VIII — *Arbitration*
>
> If any misunderstanding or dispute arises between the Company [Bankers] and the FIA with reference to any factual issue under any provisions of this Arrangement . . . such misunderstanding or dispute may be submitted to arbitration for a determination [that] shall be binding upon approval by the FIA.

*Id.* and J.A. 42.

In its Complaint, the Government has sued Bankers for a variety of alleged contract breaches stemming from a course of conduct beginning in fiscal year 1989 and lasting until September 1997. The Complaint asserts, inter alia, that Bankers failed to turn over to the Government all interest earned on NFIP funds under the Arrangement, and also that Bankers failed to provide the FIA with true and accurate information regarding administration of the NFIP and the interest earned on NFIP funds. The four bases for recovery embodied in the Complaint are: violation of the False Claims Act (Count I), breach of contract (Count II), negligent misrepresentation (Count III), and unjust enrichment (Count IV).[2] Bankers responded to the Complaint by filing its motion to stay the proceedings pending arbitration under Article VIII of the Arrangement. The district court, by letter

---

[2]The ad damnum clause of the Complaint seeks recovery from Bankers on each count in the sum of $1,098,378, plus costs, interest, and punitive damages (as well as a civil penalty under Count I). Since a recovery by the Government under the FCA would entitle it to treble damages, Bankers is apparently exposed to potential liability totalling several millions of dollars.

opinion of March 14, 2000 (the "Order"), denied the stay request and allowed the Government's suit to proceed without arbitration of its claims.

In the Order, the district court correctly observed that, "as a general proposition, there is a 'heavy presumption of arbitrability.'" Order, at 1 (citing *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996)). The court ruled, however, that traditional principles governing arbitration have no application to a "suit brought by a federal agency asserting, *inter alia*, a claim under the False Claims Act." Order, at 1. While this appeal appears to present a question of first impression — whether the existence of an FCA claim precludes arbitration of a contract dispute involving the Government — we address this issue with substantial guidance. The federal courts have on numerous occasions spoken on issues relating to arbitration and the obligations of the Government when it enters into contracts with private parties.

B.

Bankers advances several contentions in support of its position that the arbitration provision contained in the Arrangement is binding in this case. First, Bankers asserts that the applicable authorities prescribe that arbitration clauses similar to that in this case — clauses that speak permissively (i.e., "may be submitted to arbitration") — are in fact typically construed as mandatory arbitration clauses. Second, Bankers contends that the district court erred when it ignored the "heavy presumption of arbitrability" simply because this litigation involves the assertion of an FCA claim. Finally, Bankers stresses that, since all claims in the Complaint arise from the Arrangement, each (including the FCA claim) must be submitted to arbitration pursuant to the arbitration agreement.

The Government counters by echoing the reasoning of the district court, and it revives an argument presented to — but not addressed by — the court below: sovereign immunity. The Government contends that sovereign immunity precludes application of the arbitration agreement absent the Government's current consent to arbitrate. Additionally, the Government's opposition to arbitration is premised on the permissive nature of the arbitration provision and the NFIA's

specific statutory prohibition against binding arbitration.[3] Finally, the Government asserts that since the Attorney General was not a party to the Arrangement, he cannot be bound to arbitrate an FCA claim arising thereunder.

## II.

Under the Federal Arbitration Act ("FAA"), a court is required to stay "any suit or proceeding" pending the arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.[4] Because ascertaining the scope of an arbitration agreement is primarily a task of contract interpretation, we review de novo a district court's determination of the arbitrability of a dispute. *See Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). However, "in applying [common law] principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989) (internal citations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]"). If the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay. *In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *see also Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999).

---

[3]*See* 42 U.S.C. § 4083(b) ("Such arbitration shall be advisory in nature . . . final only upon the approval of the [FEMA] Director.").

[4]The Government claims that the FAA does not apply in this case, but is instead superseded by a more specific statute — the NFIA. We disagree. The FAA acts in a complementary fashion by supplying the procedural means of implementing arbitration provisions that otherwise exist in contracts. The FAA does not lose its force simply because the arbitration provision is mandated by a separate federal regulation.

## III.

### A.

The Government first contends that it has not waived its sovereign immunity, and therefore it cannot be forced to engage in the arbitration process contemplated in the Arrangement. We see the Government's reliance on the doctrine of sovereign immunity as misplaced, and in these circumstances it borders on frivolous. The Government prepared the terms of the Arrangement — including its arbitration provision — and imposed them, through its WYO program, on Bankers.[5] The Government now purports not to be bound by its own words, leaving it free to litigate at its whim. Sovereign immunity is not a sword, but a shield; and as a shield it means simply that "the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota*, 461 U.S. 273, 287 (1983). Sovereign immunity does not permit the Government to sue a third party and then pick and choose the judicial constraints and contractual obligations with which it will abide. *See Guaranty Trust Co. v. United States*, 304 U.S. 126, 134 (1938) ("By voluntarily appearing in the role of suitor [the sovereign] abandons its immunity from suit and subjects itself to the procedure and rules of decision governing the forum which it has sought.").[6]

---

[5]In order to become an insurer and a WYO Company under the regulations applicable to the WYO program, Bankers was required to agree to the terms embodied in the form agreement set forth in Appendix A of the regulations. *See* 44 C.F.R. § 62.23(a) ("Arrangements entered into by WYO Companies . . . shall be in the form and substance of the standard arrangement . . . a copy of which is included in Appendix A of this part and made a part of these regulations.").

[6]*See also United States v. Moscow-Idaho Seed Co.*, 92 F.2d 170, 173 (9th Cir. 1937) ("When the United States comes into court and institutes a suit for redress . . . [it] waives any immunity as sovereign and its adversary is entitled to set up any defense which would be available to him were his opponent another citizen instead of the government."); *State v. Shinkle*, 373 P.2d 674, 679 (Or. 1962) ("The state . . . by instituting suit submits its claim as a private litigant and subjects itself to all of the defenses available to such litigants. . . . [S]overeign immunity may be used as a shield but not a sword.").

Put simply, the doctrine of sovereign immunity is not in any way implicated or threatened by the Government's compliance with its contract obligations. When the Government chooses to seek damages in a civil action, it — like all parties — should abide by the law, including an arbitration process to which it is contractually bound.

### B.

Because sovereign immunity does not apply here, our ultimate question is simply phrased: Must the Government comply with its contract responsibilities under the arbitration agreement in the Arrangement? In addressing this question we focus on and analyze several issues.

First of all, the arbitration agreement in question does not specify that arbitration must occur, but instead uses permissive language ("[any] such misunderstanding or dispute *may* be submitted to arbitration") (emphasis added). The use of the term "may" in Article VIII of the Arrangement requires us to determine whether arbitration is mandatory when it is sought prior to litigation. Second, we must decide whether the arbitration agreement is enforceable notwithstanding that the arbitration proceeding provided for — in the Arrangement and in the statutory provisions of the NFIA — is non-binding on the Government. Third, we consider whether the existence of the FCA claim precludes arbitration in this case, in light of the Attorney General's special authority to enforce the statute.

### 1.

Although the arbitration provision of the Arrangement is framed in permissive terms, its use of permissive phraseology is not dispositive. In *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir. 1996), we had occasion to review and interpret a similar arbitration provision. We held that a clause providing that "disputes . . . may be referred to arbitration" has the effect of giving "an aggrieved party the choice between arbitration and abandonment of his claim, [i.e.,] he 'may' either arbitrate or abandon the claim." *Id.* at 879. As Judge Widener properly observed, the contrary interpretation "would render the arbitration provision meaningless for all practical purposes[,]" since parties "could always voluntarily submit [ ] to arbitration[.]" *Id.*

Second, other courts have had the opportunity to construe compara-
ble "permissive" arbitration agreements and have reached similar con-
clusions. *See American Italian Pasta Co. v. Austin Co.*, 914 F.2d
1103, 1104 (8th Cir. 1990) (holding the phrase "if both parties agree"
to be a mandatory arbitration provision); *Ceres Marine Terminals,
Inc. v. Int'l Longshoremen's Ass'n*, 683 F.2d 242, 246-47 (7th Cir.
1982) ("may refer the grievance to arbitration" is mandatory); *Local
771, I.A.T.S.E. v. RKO Gen., Inc.*, 546 F.2d 1107, 1116 (2d Cir. 1977)
("may submit to arbitration" is mandatory); *Bonnot v. Cong. of Indep.
Unions Local # 14*, 331 F.2d 355, 359 (8th Cir. 1964) (Blackmun, J.)
("The obvious purpose of the 'may' language is to give an aggrieved
party the choice between arbitration or the abandonment of its
claim.").

It is well settled that, when the United States is a party to a con-
tract, ordinary principles governing contracts and their interpretation
remain applicable. *See Lynch v. United States*, 292 U.S. 571, 579
(1934). Indeed, the Supreme Court recently reaffirmed this principle
in *United States v. Winstar Corp.*, 518 U.S. 839, 895 (1996). As Jus-
tice Souter succinctly stated: "[W]hen the United States enters into
contract relations, its rights and duties therein are governed generally
by the law applicable to contracts between private individuals." *Id.*
(quoting *Lynch*, 292 U.S. at 579). Our decision in *Austin* was prem-
ised on the ordinary principles of contract interpretation referred to by
the Court in *Winstar*, which apply regardless of the identity of the
parties to the arbitration agreement. We have no reason not to apply
those principles in this case.[7]

---

[7]Furthermore, it bears repeating that FEMA prepared the Arrangement,
the precise form and language of which was promulgated by the Govern-
ment in the Code of Federal Regulations. *See*, *e.g.*, *United States v. Seck-
inger*, 397 U.S. 203, 210 (1970) (applying the "general maxim that a
contract should be construed most strongly against the drafter" in choos-
ing to interpret a contract unfavorably to the Government, which had
drafted the contract); *Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52, 61 (1995) (citing *Seckinger*); *see also United States v. Har-
vey*, 791 F.2d 294, 300-01 (4th Cir. 1986) (applying the same rule in the
context of Government-drafted plea agreements).

2.

In asserting that the arbitration agreement should not be applied here, the Government also points out that the NFIA specifically precludes arbitration that is binding on the Government. *See* 42 U.S.C. § 4083(b). An arbitration agreement under the NFIA is therefore non-binding — the FIA Director must approve an arbitration "award, decision, or recommendation" before it is permitted to "become final[.]" *Id.* Hence, the Government claims that the arbitration agreement embodied in the Arrangement should not be enforced because it will not resolve its dispute with Bankers.

In addressing this contention, we first observe that the NFIA does not preclude mandatory arbitration; it only precludes arbitration from being binding on the Government. Mandatory arbitration, as a prerequisite to initiation of litigation, and binding arbitration, where the parties must accept an award or decision of the arbitrator, are two different things. Although non-binding arbitration may turn out to be a futile exercise — because the FIA can ultimately reject an arbitrator's decision — this fact does not, as a legal matter, preclude a non-binding arbitration agreement from being enforced. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998) (holding non-binding arbitration clause to be enforceable); *AMF Inc. v. Brunswick Corp.*, 621 F. Supp. 456, 461 (E.D.N.Y. 1985) (court could compel the parties to submit their dispute to third party for an advisory non-binding opinion under the FAA). The Government, however, contests this point also, asserting that non-binding arbitration unlikely or unable to resolve the issue fully is, by its very nature, unenforceable. *See Brennan v. King*, 139 F.3d 258, 265 (1st Cir. 1998) (refusing to enforce arbitration clause because arbitrator lacked authority to resolve "substantive" issues dividing the parties and because, even if the arbitrator were able to resolve the issue in the employee's favor, the employer could reject the decision).

Whether an agreement to enter into a non-binding arbitration process is enforceable under the FAA is a matter not well-settled in the federal courts, and we have not yet directly addressed the question. *See Wolsey*, 144 F.3d at 1208-09 (noting that issue is unsettled, but favoring the view that "the FAA applies to non-binding arbitration"). Some courts have chosen to focus on whether the arbitration process

is likely to resolve the issues, and whether the parties "agree not to pursue litigation 'until the process is completed.'" *Id.* (quoting *Harrison v. Nissan Motor Corp.*, 111 F.3d 343, 350 (3d Cir. 1997)). In evaluating a similar issue, Judge Weinstein observed, "The arbitrator's decision need not be binding . . . [as long as there are] reasonable commercial expectations [that] the dispute will be settled by this arbitration." *AMF Inc.*, 621 F. Supp. at 460-61.

The foregoing discussion, however, simply emphasizes the unusual nature of the circumstances underlying this appeal. On the one hand, Bankers asserts that the arbitration process will likely resolve this case, in part because the arbitration proceeding will include the FIA. Bankers points out that the FIA has "intimate knowledge of the programs at issue," and it is "familiar[ ] with Bankers' practices over the years[.]" Appellant's Reply Br., at 8. On the other hand, the Government — seeking to avoid arbitration — must believe either that arbitration will be unsuccessful or that any resort to the arbitration process weakens its bargaining position.[8]

The Government's position, viewed in a pragmatic manner, makes some sense. If the Government is opposed to arbitration and can reject an arbitration award or decision, the arbitration process is unlikely to provide a resolution to this case. *Cf. American Tel. & Tel. Co. v. Communication Workers of Am., AFL-CIO*, 985 F.2d 855 (6th Cir. 1993) (refusing to enjoin union protest activities pending non-binding arbitration, because in addition to failing to provide a resolution to the dispute, it would delay the union's exercise of "meaningful" activities). However, because the Government would presumably act reasonably and rationally, and would approve an arbitration award or decision that it found favorable, we are unable to conclude that arbitration proceedings would be futile.

---

[8]The Government's position that arbitration will be futile is undermined by the reality that the arbitration decision or award is binding on Bankers. Under the arbitration provision, the FIA can either accept or reject the arbitration decision, whereas Bankers is obliged to accept it. Bankers concedes this point, *see* Appellant's Reply Br., at 8 ("[T]he government's argument [that arbitration will be futile] overlooks the fact that arbitration *is* binding on Bankers; it is only non-binding on the government.") (emphasis in original).

## C.

Finally, the Government contends that the arbitration agreement is unenforceable because of the peculiar nature of an FCA claim, and also because the Attorney General "was not a party" to the Arrangement. The Government argues that, as a non-party to the Arrangement, the Attorney General is not bound by the terms of the arbitration provision, in light of (1) his exclusive statutory authority to enforce the FCA,[9] and (2) the permissive nature of the arbitration agreement. The district court accepted this rationale, concluding that, notwithstanding the rule that arbitration agreements are to be construed liberally, the Government's involvement as a plaintiff in this case mandated "that the arbitration provision be construed narrowly." Order, at 1.

## 1.

Because ordinary principles of contract law must be applied, the Attorney General's involvement in this case does not mandate the result sought by the Government. First, the role of the Attorney General relates not only to his obligations under the FCA, but also to his more general obligation to bring actions on behalf of the United States in support of government agencies. *See* 28 U.S.C. § 516 (granting the Attorney General and the Department of Justice exclusive power to direct litigation involving the United States). At bottom, the Attorney General's rights and responsibilities under the Arrangement are derivative of FEMA and the FIA, and he possesses no right to ignore the arbitration agreement that these agencies do not also possess.

Second, if we were to rely on the Attorney General's presence as counsel in this litigation to allow him to ignore the arbitration agreement, we would run afoul of applicable precedent. For example, no party suing on a contract should be able to enforce certain contract

---

[9]Pursuant to the provisions of 31 U.S.C. § 3730, the "Attorney General diligently shall investigate a violation under [the FCA]. If the Attorney General finds that a person has violated or is violating [the FCA], the Attorney General may bring a civil action under this section against the person."

provisions while simultaneously attempting to avoid the terms of an arbitration provision contained therein. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (holding that it would "both disregard equity and contravene [the FAA]" to allow a plaintiff "to claim the benefit of the contract and simultaneously avoid its burdens"); *see also Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). These decisions demonstrate that, when a third party sues on a contract, any arbitration provision contained therein remains in force. We are unable to ignore this rule simply because the Attorney General serves as counsel for the Government.

2.

The Government contends, in the alternative, that even if its three common law counts are subject to the arbitration agreement, the presence of the FCA claim gives it the right to immediately pursue litigation. This is so, the Government maintains, because of the statutory authority of the Attorney General as the exclusive enforcer of the FCA. The district court agreed on this point, concluding that directing the Attorney General to arbitrate an FCA action would dilute his "exclusive statutory authority" to institute such a claim. This was especially true, reasoned the district court, in light of the permissive language of the arbitration provision.

a.

As discussed *supra*, at Part III.B.1, our *Austin* decision controls the permissive-mandatory question, and the arbitration provision of the Arrangement must be read and applied in a mandatory fashion. Furthermore, the Supreme Court has recognized that civil claims based on statutory provisions are subject to arbitration when a controlling arbitration agreement exists.[10] *Shearson/American Express, Inc. v.*

---

[10]There can be no doubt that the arbitration agreement embodied in Article VIII of the Arrangement controls the claims made in the Complaint. This arbitration provision is an example of the broadest type of arbitration agreement: "*any* misunderstanding or dispute . . . with reference to *any* factual issue under *any* provisions of this Arrangement[.]" J.A. 42 (emphasis added). *See Int'l Paper*, 206 F.3d at 416 n.3 (finding a similar clause to be a "broad" one).

*McMahon*, 482 U.S. 220, 226 (1987) (holding statutory claims under RICO and the federal securities laws subject to arbitration). According to the Government, however, the *McMahon* decision does not apply because the FCA is different from other statutory claims, and resort to the arbitration process would, in this case, dilute the statutory authority of the Attorney General.[11]

We do not share the trepidation of the Government regarding arbitration of its FCA claim. Arbitration is not binding on the Government, and this arbitration process will not in any way dilute the Attorney General's authority. Additionally, the Government has no special right to ignore its contract responsibilities. The Government should comply with its contract obligations, and it cannot avoid them merely by invoking a statutory civil claim, such as one contemplated under the FCA.[12] *See, e.g.*, *United States v. Carter*, 454 F.2d 426, 428 (4th Cir. 1972) (contract signed by an authorized official of the Government bound the entire Government, because "[t]he United States government is the United States government throughout all of the states and districts"); *Harvey*, 791 F.2d at 303 (4th Cir. 1986) (same); *see also H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed. Cir. 1984) (to recover for breach of contract against Government, plaintiff must show "that the officer whose conduct is relied upon had actual authority to bind the government in contract").

---

[11]The Government provides no valid basis for its claim that arbitration of the FCA claim would impair the Attorney General's authority. Indeed, Department of Justice policy favors use of alternative dispute resolution in FCA cases. Policy on the Use of Alternative Dispute Resolution, 61 Fed. Reg. 36895, 36899 (1996) ("[L]itigation . . . under the False [C]laims Act . . . [is a] good candidate[ ] for ADR mechanisms.").

[12]Additionally, we observe that the Attorney General is entrusted with the power to direct all litigation involving the United States. *See* 28 U.S.C. § 516; *Dresser Indus., Inc. v. United States*, 596 F.2d 1231, 1237 (5th Cir. 1979). Although the FIA possessed authority to enter into the Arrangement and the arbitration provision therein, nothing prevents the Attorney General from using his position (to control litigation on behalf of the Government) to insure that federal agencies refrain from agreeing to arbitrate potential FCA claims. *See, e.g.*, *Thomas v. INS*, 35 F.3d 1332, 1340-41 (9th Cir. 1994).

b.

In the final analysis, the Government comes to court in the same position as any other plaintiff, except that one of its four theories of recovery, the FCA claim, is premised on a unique statutory right. Statutory civil claims are subject to the arbitration process, and the Government has demonstrated no valid basis for placing the FCA claim in a different category. In deciding whether the arbitration agreement applies, we "must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 319 (4th Cir. 1988) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 622 n.9 (1985)). Whether there has been a civil violation of the FCA depends on the duties imposed on Bankers by the Arrangement, measured against its compliance thereunder. Such issues, involving civil claims for money damages, could well be fully resolved by arbitration.

Finally, where the Government has previously agreed to an arbitration process, the statutory authority of the Attorney General is not compromised by that agreement being honored. As Justice Brandeis cogently observed years ago, "In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example." *Olmstead v. United States*, 277 U.S. 438, 468 (1928) (Brandeis, J., dissenting).

IV.

Pursuant to the foregoing, we reverse the district court's ruling, and we remand this case for entry of a stay pending arbitration of the claims asserted in the Complaint.

*REVERSED AND REMANDED*

SEYMOUR, District Judge, concurring in part and dissenting in part:

I respectfully dissent to the extent the majority concludes that the False Claims Act (FCA) claim is arbitrable. The FCA claim does not

arise pursuant to the Arrangement and consequently is not subject to the arbitration provision at issue. *See United States v. Boeing Co.*, 73 F. Supp. 2d 897, 910-11 (S.D. Ohio 1999) (claims under FCA do not arise pursuant to a contract) (citing cases).

Because the FCA claim does not arise out of the Arrangement, I believe the court must look to the language of the controlling statute to determine whether the FCA claim may be submitted to arbitration. As in any case turning on statutory interpretation, our goal is to ascertain the intent of Congress. *See Dole v. United Steelworkers*, 494 U.S. 26, 35 (1990). To accomplish this goal, we begin by looking at the language of the statute. *Adams v. Dole*, 927 F.2d 771, 774 (4th Cir. 1991). If the language is plain and unambiguous, we look no further. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41 (1989).

The FCA imposes civil liability upon any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;

> (2) knowingly makes, uses, or causes to be made or sued, a false record for statement to get a false or fraudulent claim paid or approved by the Government;

> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

> (4) has possession, custody, or control of property or money used, or to be used, by the Government and, intended to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

> (5) authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intended to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(6) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government . . .; or

(7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a).

The FCA further provides that:

[t]he Attorney General diligently shall investigate a violation under 3729 of this title. If the Attorney General finds that a person violated or is violating section 3729, the Attorney General may bring a civil action under this section against that person.

*Id.* § 3730(a).

In addition, a private person may bring a civil action for violation of § 3729 on behalf of the person and the government, and in the name of the government. *Id.* § 3730(b). Notwithstanding a private party's right to bring a *qui tam* action,

the Government may elect to pursue its claims through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under [the *qui tam* section]. . . .

*Id.* § 3730(c)(5).

A plain reading of these provisions reveals that Congress has granted the Attorney General authority to elect arbitration at his or her discretion, at least in cases wherein a private party has initiated the action.

In this case, the Attorney General elected to pursue the FCA claim against Bankers through a civil action. Assuming, for purposes of discussion, that the Attorney General possesses the authority to arbitrate FCA claims outside of *qui tam* actions, the Attorney General has declined to make such an election with respect to the FCA claim against Bankers. Bankers has no corresponding right under the FCA to seek arbitration. I would affirm the trial judge as to this issue.*

However, I agree with the majority's view that FAA principles should extend to arbitration agreements involving federal agencies. Thus, I concur that the arbitration clause at issue should be construed as mandatory despite the permissive nature of its wording. The majority's interpretation of the arbitration clause in question properly places Bankers, a private party that has contracted with the government, on the same footing as a private party that has contracted with another private party. Accordingly, the causes of action brought on behalf of FIA should be submitted to arbitration pursuant to the terms of the Arrangement. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (requiring bifurcation of arbitrable claims when a motion to compel arbitration is made).

I would affirm in part and reverse in part.

---

*Moreover, the doctrine of sovereign immunity prohibits the court from compelling the Attorney General to elect arbitration of the FCA claim. *See United States v. Murdock Machine & Engineering Co.*, 81 F.3d 922, 931-32 (10th Cir. 1996) (in the absence of governmental consent, the court lacks jurisdiction to "'restrain the government from acting, or to compel it to act'") (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704 (1949)).