JUSTICE LACY,
with whom JUSTICE HASSELL and JUSTICE KOONTZ join, dissenting.
I respectfully dissent from the majority’s opinion in this case.
This case presents an issue of first impression for the Supreme Court of Virginia: whether contractual language permitting one party to pursue arbitration constitutes the parties’ written agreement to arbitrate their disputes upon the election of either party.
“[Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.” AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986); see also Doyle & Russell, Inc. v. Roanoke Hosp. Ass’n, 213 Va. 489, 494, 193 S.E.2d 662, 666 (1973). The contract in the present case contains no language that clearly demonstrates the parties’ agreement that invocation of arbitration by one party would bind the other party to an arbitration proceeding. The contract states only that, “either Party may commence arbitration hereunder by delivering to the other Party a notice of arbitration.” Because of the ambiguity in this contract, general rules of contract interpretation must be used to determine whether the parties had an agreement to arbitrate. See United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001).
The majority’s conclusion that permissive language must be construed as mandatory is based on the rationale that to do otherwise would render the arbitration clause meaningless. However, the cases upon which the majority relies, Bankers Insurance Company, 245 F.3d 315 (4th Cir. 2001); American Italian Pasta Company v. The Austin Company, 914 F.2d 1103 (8th Cir. 1990); Bonnot v. Congress of Independent Unions Local #14, 331 F.2d 355 (8th Cir. 1964); Service Employees International Union, Local 18 v. American Building Maintenance Company, 29 Cal. App. 3d 356 (1972); City of Louisa v. Newland, 705 S.W.2d 916 (Ky. 1986); and Orthopedic Physical Therapy Center v. Sports Therapy Centers, 621 A.2d 402 (Me. *124 1993), do not support the use of this rationale in the context of this case.
Bonnot and Service Employees were labor cases in which the arbitration clauses at issue were part of collective bargaining agreements, which required the parties to exhaust the grievance procedures provided in the agreements before pursuing litigation. The language of the contracts was permissive and allowed either party to elect arbitration. In these cases, the courts held that the term “may” was intended to give the parties the choice of arbitrating their complaints or abandoning them. Because the parties had no options outside of the agreements until they exhausted all grievance procedures within the agreement, their choice of arbitration would be meaningless unless their election of arbitration mandated the participation of the other parties. Bonnot, 331 F.2d at 359; Service Employees, 29 Cal. App. 3d at 360; see also Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875 (4th Cir. 1996). American Italian Pasta Co. did not involve a collective bargaining agreement but applied Bonnot in a non-labor context where the language of the contract limited the parties’ right to pursue legal action until after the parties pursued dispute resolution procedures prescribed by the contract.
Thus in these cases, the arbitration clauses were part of agreements which required compliance with dispute resolution processes before recourse to the courts. If a party could refuse a request for arbitration by the other party, the requesting party would be forced to abandon its claim because under the agreement judicial relief could not be invoked without exhaustion of the resolution procedures, including arbitration.
In the instant case, however, the parties were not subject to a collective bargaining agreement or any other separate agreement or clause requiring that that dispute resolution mechanisms be exhausted prior to litigation. Nothing in the terms of the contract limited the options of the parties such that failure of one party to participate in either conciliation or arbitration would leave the complaining party without a remedy. The contract, as written, made two dispute resolution options available to an aggrieved party and did not limit any party’s access to the courts. Therefore, unlike the Bonnot line of cases, the arbitration option does not have to be mandatory to make a party’s choice of that option meaningful. Cf. State of the Arts, Inc. v. Congress Property Management Corp., 688 A.2d 926, 928 (Me. 1997).
*125 The second argument made by this line of cases is that the parties could have voluntarily agreed to arbitration at any time, and, therefore, the inclusion of an arbitration clause would be meaningless unless it was intended to express the parties’ agreement to arbitrate. Bankers Ins. Co., 245 F.3d at 321; American Italian Pasta Co., 914 F.2d at 1104; City of Louisa, 705 S.W.2d at 919; Orthopedic Physical Therapy Ctr., 621 A.2d at 403.
The arbitration clause in Bankers Insurance Company was a stand-alone clause that did not introduce any procedures for arbitration, but merely stated that any “misunderstanding or dispute may be submitted to arbitration.” 245 F.3d at 318. Unlike the clause at issue in this case, that clause would have been purposeless if it were not an expression of the parties’ agreement to arbitrate.
The arbitration clause in City of Louisa would not only have been meaningless if it did not mandate the participation of both parties at either party’s election of arbitration, it also would have been contrary to language in the remainder of the arbitration clause. The agreement at issue in City of Louisa stated that, “all claims, disputes and other matters . . . may be decided by arbitration.” 705 S.W.2d at 917. The sentences following specifically refer to “[t]his agreement to arbitrate” and to the “demand for arbitration” that the electing party files with the other party. Id. Read in context, the permissive arbitration language was followed by language that made clear the parties’ agreement to arbitrate and that either party may “demand” the other’s participation in arbitration. By contrast, the arbitration clause at issue in the present case includes the phrase “notice of arbitration shall specify the matters as to which arbitration is sought.” (emphasis added) Contrary to the language in City of Louisa, a party in this case does not have the right to demand arbitration, but may only seek to have arbitration. The non-compulsory nature of the phrase “to which arbitration is sought,” when contrasted with the language from City of Louisa is even more evidence that the dispute resolution provision in the present case does not include an agreement to arbitrate.
As discussed above, American Italian Pasta Company relies on the reasoning of the Bonnot case for its holding and only secondarily includes the statement that the arbitration clause would be meaningless if it were not mandatory because the parties could agree to arbitrate in the absence of such a clause. 914 F.2d at 1104. But while both American Italian Pasta Co. and Orthopedic Physical Therapy Ctr. recite this principle, they do no more than state it and fail to *126 explain its application to the circumstances of those cases. Therefore, they have little precedential value.
As NCP points out, this Court has held that “words are not meaningless merely because they impose no legal obligation. Parties frequently include precatory language in agreements ... to express a sentiment, wish, or desire with regard to the parties’ future course of conduct.” Ross v. Craw, 231 Va. 206, 214-15 (1986). The majority recognizes that “the word ‘may’ is permissive, but it clearly means that either party has the discretion to choose arbitration if conciliation is not successful.” This is the plain meaning of the subject clause and it does not become meaningless simply because it does not create a legal obligation for the other party to participate in arbitration. Instead, it has meaning because it introduces the option of arbitration as a means of dispute resolution and the remainder of § 11.12 of the contract, which mandates the procedures that the parties must follow if arbitration is pursued.
Finally, the majority relies upon a public policy in favor of arbitration. Public policy in Virginia is by no means against arbitration, but the cases both in Virginia and in other jurisdictions that discuss the presumption in favor of arbitration do so in terms of the scope of arbitration agreements, not the existence of such agreements. The presumption is applied when a court is trying to determine whether the conflict at issue is within the scope of an already established agreement to arbitrate. The presumption in favor of arbitrability arises only after a determination has been made that the parties agreed to arbitrate. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945-46 (1995); Bell Atlantic Corporation v. CTC Communications Corp., 1998 Va. LEXIS 20160 (2nd Cir. 1998); Bonnot, 331 F.2d at 359. The present case calls upon this Court to determine whether there is an agreement to arbitrate, not whether an issue falls within the scope of that agreement. Therefore, the presumption in favor of arbitrability does not apply.
Instead, legal precedent relevant to these determinations discusses the importance of a party’s “right to a court’s decision about the merits of its dispute,” a right that is relinquished by an agreement to arbitrate. First Options of Chicago, 514 U.S. at 942; cf. Waterfront Marine Construction, Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B and C, 251 Va. 417, 426-27, 468 S.E.2d 894, 899 (1996). It is this principle, that all parties have an important right to judicial resolution of their conflicts, that should serve as a guide when interpreting the language of a contract.
*127 For these reasons, I believe that the cases relied upon by the majority do not support the holding that TMDP and NCP had an agreement to arbitrate. Rather, I conclude that the arbitration clause is meaningful without mandating arbitration because it introduces a dispute resolution option and the procedures to be followed if the parties elect arbitration and, applying the principle that parties have a right to judicial resolution of their conflicts, an agreement to arbitrate must be clearly understood from the terms of the contract. Finding no such agreement in this contract, I would affirm the judgment of the trial court.